# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ANNA MAURINE GRIMES, et al., | ) |
| Plaintiffs, | ) ) ) |
| v. | ) Case No. CIV-08-1222-D |
| CIRRUS INDUSTRIES, INC.; CIRRUS DESIGN CORPORATION; TELEDYNE CONTINENTAL MOTORS, INC.; and TELEDYNE TECHNOLOGIES, INC., | ) ) ) ) ) |
| Defendants. | ) ) |

## **O R D E R**

Before the Court is the Motion to Dismiss [Doc. No. 26] filed by Defendant Teledyne Continental Motors, Inc. ("TCM"). TCM seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(2), arguing that it lacks sufficient contacts with the forum to permit the Court to exercise personal jurisdiction. Plaintiff responded to the Motion, TCM filed a reply, and Plaintiff filed a Court-authorized surreply.

I. Background:

Plaintiffs allege that Defendants are liable for the wrongful deaths of Joe Kenneth Grimes ("Grimes") and William P. Jackson ("Jackson"), who died as a result of injuries sustained in a February 2, 2008 aircraft crash near the municipal airport in Lindsay, Oklahoma. The aircraft was a single engine Cirrus SR22, N824BJ (the "Aircraft"). At the time of the crash, Jackson was the pilot of the Aircraft, and he was its registered owner; Grimes, a certified flight instructor, was his passenger.

TCM designed and manufactured the engine used in the Aircraft, a Model IO-550-N engine (the "Engine"). TCM is a Delaware corporation having its principal place of business in Mobile, Alabama; the Engine was designed and manufactured by TCM at its Alabama location. Defendants Cirrus Industries, Inc. and Cirrus Design Corporation (collectively, "Cirrus"), are Delaware corporations with principal places of business in Minnesota; Cirrus designed and manufactured the Aircraft. TCM delivered the Engine to Cirrus for installation in the Aircraft at the Cirrus location in Minnesota, and Cirrus sold the Aircraft to Jackson, an Oklahoma resident.

Plaintiffs allege that TCM and Cirrus[1] are liable to them because the Aircraft crash was caused by the defective and/or negligent design and manufacture of the Engine and the Aircraft. Plaintiffs also allege that Defendants failed to properly test and inspect the Aircraft, the Engine, and the component parts; additionally, they contend Defendants failed to instruct owners regarding the maintenance and operation of the Aircraft and/or the Engine. They also allege that Defendants were aware of previous problems involving the Engine's fuel pump and failed to warn purchasers of those problems.

TCM argues the claims against it must be dismissed because it lacks sufficient contacts with Oklahoma to permit the exercise of jurisdiction over it in this forum. With the agreement of Defendants, Plaintiffs conducted discovery, including depositions, regarding the jurisdictional issue. Plaintiffs sought and were granted several extensions of time in which to respond to the Motion. As exhibits to their response, Plaintiffs submit an extensive record consisting of documents, excerpts from deposition transcripts, and other materials obtained in discovery; TCM also submits evidentiary materials.

---

[1] Initially, Plaintiffs also sued Teledyne Technologies Incorporated; however, they subsequently voluntarily dismissed it from this action [Doc. No. 9].

II.  Analysis:

A.  Procedure and burden of proof:

The Court has discretion to determine the procedure to employ when considering a motion to dismiss for lack of personal jurisdiction. *Federal Deposit Ins. Corp. v. Oaklawn Apartments,* 959 F.2d 170, 174 (10th Cir. 1992).   Having reviewed the multiple briefs and extensive evidentiary materials submitted in this case, the Court concludes the parties have presented sufficient legal argument and evidence on which to base a ruling, and a hearing is not required.

Where the Court does not hold an evidentiary hearing, a plaintiff must only make a *prima facie* showing of personal jurisdiction by demonstrating, via affidavit or other written materials, facts that, if true, would support jurisdiction over the defendant. *AST Sports Science, Inc. v. CLF Distribution Limited*, 514 F. 3d 1054, 1057 (10th Cir. 2008); *Melea, Ltd. v. Jawer SA*, 511 F. 3d 1060, 1065 (10th Cir. 2007).  The same rule applies where the Court allows discovery on the issue and does not conduct a hearing. *Soma Medical International v. Standard Chartered Bank*, 196 F. 3d 1292, 1295 (10th Cir. 1999).  The Court considers and construes as true only "plausible, non-conclusory, and non-speculative" allegations in the Complaint. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F. 3d 1063, 1070 (10th Cir. 2008).  If the parties submit conflicting affidavits, all factual disputes must be resolved in Plaintiffs' favor. *AST*, 414 F. 3d at 1057 (citing *Wenz v. Memery Crystal*, 55 F. 3d 1503, 1505 (10th Cir.1995)).  By the end of trial, however, the plaintiff must have proved the jurisdictional facts by a preponderance of the evidence. *Federal Deposit Ins. Corp.,*  959 F.2d at174 (citations omitted).

B.  Evidence in the record:

In this case, the parties agree that TCM is a Delaware corporation with its principal place of business in Mobile, Alabama. Its business involves manufacturing, designing, and distributing aircraft engines and component engine parts, and it does not dispute that it designed the Engine used in the Aircraft which is the subject of this lawsuit. It is also not disputed that the Engine was designed and manufactured by TCM in its Alabama facility; it was sold and shipped to Cirrus in Minnesota, where it was installed in the Aircraft. Decedent Jackson purchased the Aircraft from Cirrus on or about September 5, 2006. *See* Aircraft bill of sale, Plaintiffs' Exhibit 6.

The parties agree that TCM is not licensed, authorized or registered to conduct business in Oklahoma, nor does it maintain offices or employees in Oklahoma; it does not pay taxes, maintain bank accounts, or own or lease property here. No TCM officer, director or employee resides in Oklahoma. Additionally, it is undisputed that TCM has no Oklahoma telephone or facsimile listing, and it does not maintain a regional representative here. It does not directly conduct advertising in Oklahoma, nor does it recruit employees here; its engines and component parts are not sold or shipped to end users in Oklahoma.

Notwithstanding the foregoing, Plaintiffs argue that personal jurisdiction is proper in this case because, at the time the Aircraft was sold to Jackson in Oklahoma, TCM had a distribution agreement with Tulsair Beechcraft, Inc. ("Tulsair") in Tulsa, Oklahoma; TCM sold component engine parts in Oklahoma through Tulsair, its authorized distributor, from approximately 1997 through 2009. TCM agrees that Tulsair acted as its distributor in Oklahoma during that time period. Affidavit of TCM Vice-President and Chief Financial Officer William Read, TCM Exhibit 1 to its motion ("Read affidavit"). However, it contends that Tulsair was not an exclusive distributor for TCM, as it also sold and distributed other manufacturers' engines and component parts; Tulsair was

4

not considered a sales representative of TCM, and was not authorized to act as its agent or to transact business in TCM's name. Read affidavit, ¶¶ 19, 20. TCM argues that the nature of its business arrangement with Tulsair is not sufficient to create minimum contacts with Oklahoma.

TCM and Tulsair executed a Product Support Agreement ("Agreement") for the time period of 2007-08; a copy is submitted as Plaintiff's Exhibit 2. The Agreement provides that Tulsair will act as "distributor" for TCM; Tulsair's role is generally described as "selling certain new and rebuilt TCM piston aircraft engine series and replacement parts for such engines." Agreement p. 1. In the Agreement, TCM appoints Tulsair to act as "a TCM Piston Aircraft Engine and Parts Distributor and Service Provider" with respect to specified piston engine series and replacement parts for the same.[2] *Id.,* ¶ 1. The Agreement requires that Tulsair "place orders for and take delivery of a minimum of $50,000 per calendar year in genuine TCM Products." Agreement, ¶ 3.

The Agreement also requires Tulsair to maintain "at least one person in its employ who will be designated as a TCM sales and service specialist." *Id.*, ¶ 8. The Agreement names Sean Sowell of Tulsair as the person holding that position for 2007-08. Although Sean Sowell testified in his deposition he was not aware he had been designated for that position, he confirmed he was involved with communications regarding sales and service of TCM products. Sean Sowell deposition, TCM reply Exhibit 1, pp. 22-23. Sowell also testified that he attended a November 2008 distributors' meeting at TCM's Alabama facility, where information was provided to distributors regarding product information and pricing. Sowell deposition, Plaintiffs' Exhibit 10, p.24.

The Agreement also provides that Tulsair will perform, or cause to be performed, warranty repair work on TCM's engines, and it will process warranty claims using TCM's Online Warranty

---

[2]The specific products are listed on an exhibit to the Agreement.

Claims system. Agreement, ¶ 10. In addition, Tulsair agreed to process returns of goods to TCM, using an online system. *Id.*, ¶ 11. Tulsair also agreed to place orders with TCM through an online procedure known as TCMLink[3]. Agreement, ¶¶ 9, 14.

In addition to describing the foregoing and other details regarding the manner in which Tulsair would work with TCM in connection with the sales and service of TCM products, the Agreement contains a specific description of the "legal status" of the parties. Specifically, the Agreement states that Tulsair "is not authorized to act as agent or representative of TCM, to transact business in the name of or on behalf of TCM or to incur obligations on behalf of TCM." Agreement, ¶ 19. The parties' relationship is described as "that of vendor and purchaser." *Id.*

It is not disputed that TCM and Tulsair had a non-exclusive distributorship agreement beginning in 1997; their agreement was renewed annually through at least the end of calendar year 2008. It was not renewed for 2009.

C.   Standards governing personal jurisdiction:

It is well established that, to be subject to the personal jurisdiction of the court, a nonresident defendant must have sufficient contacts with the forum state to satisfy the requirements of due process. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980); *Peay v. BellSouth Med. Assistance Plan*, 205 F. 3d 1206, 1209 (10th Cir. 2000). "The analysis of the personal jurisdiction question in diversity cases generally involves a 2-step inquiry: courts must determine

---

[3]Plaintiffs argue that the internet site utilized by Tulsair in its dealings with TCM constitutes evidence of contacts with Oklahoma. However, there is no evidence that the internet site was utilized by TCM to communicate with the public in general or that TCM advertised products or services through that site. Instead, the evidence suggests it was a means of carrying out some of the terms and requirements of the Agreement. As a result, the Court does not find it necessary to apply the analysis of *Soma Medical International v. Standard Chartered Bank*, 196 F. 3d 1292 (10th Cir. 1999) and similar decisions to determine whether TCM's internet usage supports the exercise of personal jurisdiction.

whether the exercise of jurisdiction is consistent with (1) the long-arm statute of the forum state, and (2) the due process clause of the fourteenth amendment." *McClelland v. Watling Ladder Co.*, 729 F. Supp. 1316, 1318 (W. D. Okla. 1990). In Oklahoma that test becomes a single inquiry because Oklahoma's long-arm statute extends to the full extent of due process. *Rambo v. American Southern Ins. Co.*, 839 F. 2d 1415, 1416 (10th Cir. 1988).

The "minimum contacts" required to satisfy due process may be shown by evidence sufficient to establish "general" or "specific" jurisdiction. *Bell Helicopter Textron, Inc. v. Heliqwest International, Ltd.*, 385 F. 3d 1291, 1296 (10th Cir. 2004) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985)). General personal jurisdiction exists where a plaintiff's cause of action does not result from the defendant's conduct within the state, but the defendant has maintained "continuous and systematic general business contacts in the state." *Bell Helicopter*, 385 F. 3d at 1296 (citing *Helicopteros Nacionales de Columbia v. Hall*, 466 U. S. 405, 414-415 (1984)). Specific personal jurisdiction exists where a defendant does not have continuous contacts with the state, but the plaintiff shows that 1) the defendant has purposefully directed its activities at residents of the forum state and 2) the plaintiff's alleged injuries "arise out of or relate to" those activities. *Burger King*, 471 U.S. at 473. In this case, Plaintiffs contend that the evidence is sufficient to satisfy the requirements of both specific and general personal jurisdiction over TMC.

<u>1. Specific Personal Jurisdiction:</u>

To determine if specific personal jurisdiction may be exercised over TMC, the Court must engage in a "two-step inquiry" to ensure that due process is satisfied. *Pro Axess, Inc. v. Orlux Distribution, Inc.,* 428 F. 3d 1270, 1276- 1277 (10th Cir. 2005) (citing *Benton,* 375 F. 3d at 1075). First, the Court examines the nature and the quality of TMC's contacts with Oklahoma to

determine if they are sufficient to show TMC "purposefully availed" itself of the benefits of doing business here, thus invoking the benefits and protections of Oklahoma law. *Id.* If the evidence is sufficient to support that conclusion, the Court must then consider whether the exercise of personal jurisdiction over TMC "offends traditional notions of fair play and substantial justice." *Id*. (citations omitted).

A defendant's contacts are sufficient to show "purposeful availment" if "the defendant purposefully directed its activities at residents of the forum, and ... the plaintiff's claim arises out of or results from actions by the defendant himself that create a substantial connection with the forum state.*"* *OMI Holdings,* 149 F. 3d at 1091 (quotations, citations, and emphasis omitted). The requirement of "purposeful availment" precludes personal jurisdiction where the contacts are "random, fortuitous, or attenuated." *Burger King*, 471 U.S. at 475. (citations and internal quotation marks omitted). "Specific jurisdiction must be based on actions by the defendant and not on events that are the result of unilateral actions taken by someone else." *Bell Helicopter*, 385 F. 3d at 1296. However, if another party acts unilaterally, "solicitation" by the defendant is "some evidence suggesting purposeful availment." *Id.*, at 1297. "[T]he mere foreseeability that a customer will unilaterally move a chattel into a given state does not create jurisdiction over the vendor of the chattel." *Bell Helicopter*, 385 F. 3d at 1297 (citing *World-Wide Volkwagen*, 444 U.S. at 298).

In this case, Plaintiffs contend that specific jurisdiction is present. The parties do not dispute that the Engine at issue was manufactured by TCM and installed by Cirrus in the Aircraft. The evidence does not suggest, however, that Tulsair had any involvement in the sale of the Engine or its component parts. There is no evidence that TCM knew the Engine would be used in an Aircraft in Oklahoma.

Plaintiffs argue that such knowledge is not critical because, by placing its products in the national stream of commerce, TCM knew that its products might be used in Oklahoma. As Plaintiffs point out, courts in other jurisdictions have found that, where a manufacturer places its products in the stream of commerce, it is reasonable and foreseeable that the products will be used in many states, thus subjecting the manufacturer to jurisdiction in numerous forums. *See, e.g., Vermeulen v. Renault, U. S. A, Inc.,* 985 F.2d 1535, 1549-50 (11th 1993); *Oswalt v. Scripto, Inc.*, 616 F.2d 191, 199-200 (5th Cir. 1980). The Tenth Circuit, however, has been more restrictive in its view:

> In the context of products liability the minimum contacts requirement turns, in some measure, on foreseeability. The Supreme Court has explained that "the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State [but] that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."

*Bell Helicopter Textron, Inc. v. Heliqwest Intern., Ltd.*, 385 F. 3d 1291, 1295-96 (10th Cir. 2004) (quoting *World-Wide Volkswagen Co.*, 444 U.S. at 297). "The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." *Asahi Metal Industry Company, Ltd. v. Superior Court*, 480 U.S. 102, 112 (1987) (plurality opinion)(O'Connor, J.). While Plaintiffs correctly argue that other jurisdictions have applied the "stream of commerce" analysis to support jurisdiction, they do not submit authority indicating that the Tenth Circuit has altered the view, expressed in *Bell Helicopter Textron*, that minimum contacts in a products liability action cannot be based *only* on the likelihood that a product will find its way into a state. This Court has previously declined to depart from the Tenth Circuit's view, *see De la Paz v. DBS Manufacturing, Inc.*, 2008 WL 2329126, at * 7 (W. D. Okla. June 3, 2008), and Plaintiffs do not persuade the Court that it should do so in this case.

However, the record reflects that, to support jurisdiction, Plaintiffs do not rely solely on the fact that TCM placed its products into the national stream of commerce. TCM's distributorship agreement with Tulsair provides evidence that the sale of TCM products in Oklahoma was more than a mere possibility. By the terms of the Agreement, TCM knew the engines and component parts distributed by Tulsair would be sold and used here. Furthermore, Plaintiffs submit documents reflecting sales of TCM products by Tulsair for the time period of 2005 through 2008. Plaintiffs' Exhibit 7. Those documents reflect regular and ongoing sales of TCM products by Tulsair in Oklahoma. Furthermore, the Agreement states that Tulsair provides not only sales but service functions for TCM, including but not limited to warranty work.

TCM argues, however, that the net proceeds from its distributorship arrangement with Tulsair represent a very small percentage of its income, comprising less than one percent of its total sales to domestic and international distributors in 2007 and 2008. Read affidavit, TCM Exhibit 1, ¶ 22. Furthermore, it argues, the Agreement expressly provides that Tulsair is not its agent in Oklahoma, and it is undisputed that Tulsair was an independent distributor which also handled sales and service for other manufacturers. Notwithstanding its status as an independent distributor, however, Tulsair was expected to produce a significant volume of orders for TCM products; it was required to place orders for and take delivery of a minimum annual dollar amount. Agreement, ¶ 3. The Agreement terms, when reviewed in their entirety, reflect that Tulsair was expected to perform a significant amount of sales and service work on behalf of TCM with respect to TCM's products, including TCM engines and their component parts.

2. General personal jurisdiction:

If TCM's contacts with Oklahoma did not satisfy the requirements of specific personal jurisdiction, the Court must consider whether Plaintiffs have presented sufficient evidence to establish general personal jurisdiction. As noted, *supra*, where the events underlying the lawsuit are not related to the defendant's specific conduct in the state, the forum may exercise personal jurisdiction over that defendant if it maintains sufficient general contacts with the state. *Benton v. Cameco Corp.*, 375 F. 3d 1070, 1080 (10th Cir. 2004), *cert. denied*, 544 U. S. 974 (2005) (citing *Helicopteros Nacionales*, 466 U. S. at 415). "'Because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's continuous and systematic general business contacts.'" *Benton*, 375 F. 3d at 1080 (quoting *OMI Holdings, Inc. v. Royal Ins. Co. of Canada,* 149 F.3d 1086, 1091 (10th Cir. 1998)).

To determine if a defendant's contacts are sufficient for general personal jurisdiction, the Court should consider factors such as:

> (1) whether the corporation solicits business in the state through a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state, through advertisements, listings or bank accounts; and (4) the volume of business conducted in the state by the corporation.

*Kuenzle v. HTM Sport-Und Freizeitgerate AG,* 102 F. 3d 453, 457 (10th Cir.1996). Additional factors properly considered are whether the defendant owns, leases or controls property or assets, maintains telephone or facsimile listings, or recruits prospective employees in the forum state; whether the defendant generates a substantial percentage of its national sales through revenue generated from customers in the state may also be considered. *Soma Medical Int'l v. Standard Chartered Bank*, 196 F. 3d 1292, 1295-96 (10th Cir. 1999).

In this case, Plaintiffs contend that general jurisdiction may be exercised over TCM because it maintained continuous business contacts with Oklahoma through its distributorship agreement with Tulsair. Plaintiffs argue TCM's ongoing business arrangement with Tulsair for the time period of 1997 through 2008 established sufficient contacts to satisfy the requirements of general jurisdiction. Although TCM admits its former arrangement with Tulsair, it argues that the nature of their business relationship is insufficient to establish the required contacts with Oklahoma.

As TCM notes, the Agreement expressly states that Tulsair is not authorized to act as TCM's agent. The Tenth Circuit has held that "in the absence of an agency relationship, the acts of a distributor are not ordinarily attributable to a foreign manufacturer for purposes of establishing general jurisdiction." *Kuenzle,* 102 F. 3d at 459. However, *Kuenzle* involved a foreign manufacturer whose contact with the forum state was limited to the fact that its products were marketed through an independent distributor; otherwise, the manufacturer had no contacts with the state. *Id.*

The evidence before the Court reflects that TCM had an ongoing and continuous business relationship with Tulsair, located in Oklahoma, and that the relationship continued for a period of ten years. Although TCM argues its relationship with Tulsair during 2007 and 2008 did not generate substantial income for TCM, the record reflects that Tulsair provided significant sales and service work on behalf of TCM through Tulsair's Oklahoma business.

<u>3. Whether the exercise of jurisdiction would be unfair or unduly burdensome:</u>

The Court must also determine if the exercise of jurisdiction over TCM would "offend traditional notions of fair play and substantial justice." *Burger King*, 471 U.S. at 478. To do so, the Court considers the following factors: 1) the burden on TCM; 2) the forum state's interest in

12

resolving the dispute; 3) Plaintiffs' interest in receiving convenient and effective relief; 4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and 5) the shared interest of the several states in furthering fundamental substantive social policies. *OMI Holdings,* 149 F. 3d at 1095 (quoting *Asahi Metal Industry*, 480 U.S. at 113).

Litigation in this forum is unduly burdensome for TCM if the evidence shows that it would be "so gravely difficult and inconvenient" that TCM would be at a "severe disadvantage." *Burger King*, 471 U.S. at 478. As Plaintiffs point out, this Circuit has observed that in this age of modern transportation and communication, "the burdens of litigating in a distant forum have lessened." *Peay v. BellSouth Med. Assistance Plan,* 205 F. 3d 1206, 1212-13 (10th Cir. 2000) (quotations omitted).

Here, the evidence does not support a conclusion that TCM would be unduly burdened. It does not dispute that it is a national company and its engines and component parts are widely distributed. Additionally, the Aircraft manufacturer, Cirrus, will also incur some inconvenience because it is located in Minnesota. However, there is no evidence before the Court to suggest that TCM will suffer a more substantial burden if it is required to litigate Plaintiffs' claims here.

On the other hand, Plaintiffs are Oklahoma residents, the Aircraft crash occurred here, and the decedents were Oklahoma residents. Oklahoma has an interest in providing a forum in which its residents can seek redress for injuries allegedly caused by out-of-state actors. *OMI Holdings*, 149 F. 3d at 1096.

Furthermore, because the crash occurred in Oklahoma, it is likely that there will be evidence found here; additionally, many witnesses are located in the forum state. While there will certainly be defense witnesses who will be required to travel here, there is no forum that would be any more

13

convenient for all witnesses. As Plaintiffs point out, Oklahoma is centrally located, and requiring both defendants to travel here would not be unduly burdensome. The Court concludes that the claims can be efficiently litigated here.

TCM does not suggest that litigating the claims here would impact the social policy of other states, and there is no evidence to support that finding. Thus, this factor does not impede the Court's decision regarding the propriety of litigating the case in this forum.

Accordingly, the Court concludes that the exercise of jurisdiction over TCM in this forum would not offend traditional notions of fair play and substantial justice.

III. Conclusion:

The Court concludes that, based on the applicable law and the facts in evidence, Plaintiffs have satisfied their *prima facie* burden of establishing facts to show that TCM has sufficient contacts with Oklahoma to permit the Court to exercise personal jurisdiction over TCM.

With respect to specific personal jurisdiction, the parties agree that the Engine at issue was manufactured by TCM; Plaintiffs allege that the crash which resulted in the deaths of Jackson and Grimes was caused by defects in the Engine or its component parts. Although TCM disputes that allegation, Plaintiffs contentions in that regard are sufficient to satisfy this prong of the test for specific jurisdiction. The Court further concludes that Plaintiffs have presented sufficient evidence to satisfy their *prima facie* burden of showing TCM had contacts with Oklahoma through its distributorship agreement with Tulsair sufficient to show purposeful availment of the privilege of conducting business here.

Even if Plaintiffs could not show that their claimed damages were the result of TCM's activities in Oklahoma, the Court finds that the evidence is sufficient to permit the exercise of

14

general jurisdiction over TCM based on its ongoing and continuous relationship with Tulsair during a ten-year period, including the time period in which the Engine was manufactured and installed in the Aircraft.

Finally, the Court concludes that its exercise of jurisdiction over TCM would not offend traditional notions of fair play and substantial justice.

For the foregoing reasons, TCM's Motion [Doc. No. 26] is DENIED. The action will proceed accordingly.

IT IS SO ORDERED this 12th day of April, 2010.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE